JOSEPH T. PUPECKI vs. JAMES MADISON CORPORATION
& others.

Worcester. February 13, 1978. — August 24, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Corporations*, Stockholder, Close corporation, Sale of assets, Stock-
holder's derivative suit. *Champerty.*

A minority shareholder was not limited in his remedies to appraisal
of his shares under G. L. c. 156B, § 98, where his complaint alleged
that the corporation had sold substantially all its assets for inade-
quate consideration, with additional consideration from the pur-
chasers diverted from the corporation to its controlling shareholder
under the guise of payment for separate employment and noncom-
petition agreements. [216–217]
An allegation in a complaint by a minority shareholder that corporate
assets were sold for inadequate consideration, with additional con-
sideration from the purchasers diverted from the corporation to the
controlling shareholder, was not refuted by an affidavit filed by the
defendants, asserting generally that the transactions were not in-
tended to benefit the controlling shareholder at the plaintiff's ex-
pense, so as to warrant the granting of the defendants' motion for
summary judgment. [217–218]
In an action by a minority shareholder seeking rescission of an agree-
ment to sell the corporate assets, it was error to grant the defend-
ants' motion for summary judgment on the ground that the plain-
tiff failed to satisfy the requirements for bringing a derivative suit
on the corporation's behalf where it appeared that the owner of
ninety per cent of the corporation's stock not only voted for the sale
but also was the primary beneficiary of it and where the plaintiff's
failure to allege why a demand on the directors would have been
futile could be remedied by amending the complaint. [218–219]
An agreement between a minority shareholder seeking rescission of
a sale of corporate assets and the corporation, one of the defendants,
that the corporation would reimburse the plaintiff for the expenses
and fees of the suit, regardless of its outcome, was not champertous
where the corporation had an interest in the suit and its promise

to pay the expenses was not made in consideration for a portion of any recovery. [219–220]

CIVIL ACTION commenced in the Superior Court on August 23, 1976.

Motions to dismiss and for summary judgment were heard by *Meagher, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*H. Mitchell Gould* for the plaintiff.

*Robert D. Price* for James Madison Corporation.

*Daniel I. Cotton* for Bretco Associates & others.

QUIRICO, J. In this case the plaintiff alleged that the corporation of which he was a minority shareholder had sold substantially all its assets for inadequate consideration, with additional consideration from the purchasers diverted from the corporation to its controlling shareholder under the guise of being payment for separate employment and noncompetition agreements. The trial judge granted motions to dismiss and for summary judgment in favor of the defendants. The principal question before us is whether the allegations would be sufficient, if proved, to constitute illegality or fraud under G. L. c. 156B, § 98, so as to entitle the plaintiff to relief other than appraisal of his shares.

We first summarize the allegations admitted by the parties. The defendant James Madison Corporation (Madison), a Massachusetts corporation, formerly known as Madison Wire and Cable Corp., operated a small wire and cable business. Its two stockholders were the plaintiff Joseph T. Pupecki, who owned five shares of the common voting stock, and Martin Fisher, who owned the remaining forty-seven and one-half shares outstanding. Pupecki and Fisher were both employees of the corporation, and Fisher was also a director.

Sometime prior to April 14, 1976, Fisher notified Pupecki that a stockholders' meeting would be held on that date for the purpose of authorizing the sale of substantial-

ly all of Madison's assets.[1] At the meeting the sale was approved over the objecting vote of Pupecki, and shortly thereafter agreements for the sale were signed. The purchasers were the defendant Bretco, Inc., a Massachusetts corporation which was to buy the nonrealty assets, and the defendant Bretco Associates, a partnership composed of the defendants Robert M. Bretholtz and Harold N. Cotton, which was to purchase the real estate (these four defendants will be referred to collectively as Bretco). Under the terms of the respective agreements Bretco was to pay Madison the net book value for the company's inventory and the same for its machinery and equipment. The amounts were estimated in the contract as $285,000 and $157,973, respectively. Bretco agreed to purchase the real estate for $470,000.

In addition to these agreements between Bretco and Madison, Fisher and Bretco entered into two separate agreements between themselves, the execution of these being condition precedent to the sale of the corporate assets. The first agreement entitled "Employment and Consultant Agreements," provided that Fisher would work full time for Bretco, for two years at an annual salary of $42,100, with the option of either continuing the full-time employment for eight more years at the same salary, or of selecting instead to become a consultant to the firm on a part-time basis at an annual salary of $20,-000. The second agreement entitled "Covenant Not to Compete," provided that, in return for Bretco's promise to pay Fisher $100,000 over a ten-year period, Fisher agreed that he would not, either directly or indirectly, become engaged in the wire and cable business for that length of time. In sum, then, the total benefits realizable to Fisher as the result of his personal transactions with the purchasers of Madison ranged from a maximum of $521,000, if he continued to work full-time for the entire

---

[1] This included the corporation's equipment and machinery, inventory, real estate, and good will.

ten years, to a minimum of $344,200 if he chose rather to exercise the part-time option available under the employment agreement.

On August 23, 1976, the plaintiff filed suit in Superior Court seeking to rescind all agreements that transferred Madison's assets to the Bretco parties. He charged that the consideration to be paid for the assets was inadequate, that Fisher, through his ownership of over ninety per cent of Madison's outstanding voting shares, had caused the assets to be sold for the inadequate consideration, and that Fisher had diverted to himself individually, through his employment and noncompetition agreements with Bretco, funds that rightfully belonged to the corporation because they were really consideration for the assets. Each of the defendants denied this claim in its answer. Subsequently the Bretco defendants filed motions to dismiss[2] and motions for summary judgment which stated a variety of grounds. These were granted by a judge of the Superior Court without opinion and final judgment was entered for all the defendants. The plaintiff appealed, and we granted an application for direct appellate review. G. L. c. 211A, § 10 (A).

Since the judge did not indicate on which ground he granted the defendants' motions, all the grounds specified below are open on appeal. *Siegel* v. *Knott*, 316 Mass. 526, 527 (1944). See *Alholm* v. *Wareham*, 371 Mass. 621, 625 (1976); *Greeley* v. *Zoning Bd. of Appeals of Framingham*, 350 Mass. 549, 551 (1966). We examine, however, only those that the Bretco defendants[3] have argued in

[2] Although labelled a motion to dismiss, the defendants' motion, since it was filed after they had answered, was a motion for judgment on the pleadings. Mass. R. Civ. P. 12, 365 Mass. 754 (1975).

[3] Apparently as the result of its own recent wish to rescind the sale, the defendant Madison argues in its brief a position in support of the plaintiff. It also argues that the agreement for sale should be rescinded because of a breach by the purchasers of a condition of the agreement. We need not reach this claim because of our disposition of the plaintiff's appeal.

their brief. These are (1) that G. L. c. 156B, § 98, limits the plaintiff's remedy to appraisal of his shares, (2) that the plaintiff failed to meet the requirements for bringing a derivative suit under Mass. R. Civ. P. 23.1, 365 Mass. 768 (1974), and (3) that the suit is champertous.[4]

1. The primary ground for both the motion to dismiss and the summary judgment motion was that the plaintiff, pursuant to G. L. c. 156B, § 98, was limited in his remedies to appraisal of his shares. We hold that this ground is inadequate as to both motions because, respectively, the complaint alleged facts that justify relief other than appraisal, and the defendants failed to refute these factual allegations by affidavits. Section 98, as amended by St. 1965, c. 685, § 43, referring to the right of appraisal defined in chapter 156B, provides: "The enforcement by a stockholder of his right to receive payment for his shares in the manner provided in this chapter shall be an exclusive remedy except that this chapter shall not exclude the right of such stockholder to bring or maintain an appropriate proceeding to obtain relief on the ground that such corporate action will be or is illegal or fraudulent as to him." The defendants contend that the facts alleged in the complaint are not sufficient to constitute illegality or fraud under this provision. We disagree. The complaint alleges that the consideration paid for Madison's assets was substantially less than fair value, and that this underpayment was made up by payments made directly to Fisher who, as owner of approximately ninety per cent of the outstanding voting stock, was able to control Madison's affairs and determine the terms of the sale of its assets. The complaint asserted that these payments

---

[4] The defendants also alleged, as a ground for the motion to dismiss, that the plaintiff had failed to join an indispensable party, pursuant to Mass. R. Civ. P. 19, 365 Mass. 765 (1974), and, as a ground for the motion for summary judgment, that the plaintiff had no standing. However, these grounds were not argued in the defendants' brief. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

to Fisher, although they were made in the guise of consideration for employment and noncompetition agreements between Fisher and the purchasers, were actually in consideration for the corporation's assets, and were thus a diversion of funds rightfully belonging to the corporation. Because of his controlling ownership in Madison, Fisher possessed the authority to cause the corporation to sell its assets, G. L. c. 156B, § 75; he was also under a duty, however, to assure that the corporation received adequate consideration for them. Cf. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842 (1976), *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578 (1975). If the allegations of the diversion of corporation property are proved by the plaintiff that would constitute "illegality or fraud" within the provision of § 98 and thus entitle him to remedies other than appraisal. See *Smith* v. *Good Music Station, Inc.*, 36 Del. Ch. 262 (1957).

We further hold that the defendants did not refute these allegations of fact with affidavits so as to warrant the granting of the summary judgment motion. The complaint was verified and is therefore treated as an affidavit in so far as it contains specific facts that the signer knows to be true.[5] *Kahn* v. *Garanzini*, 411 F.2d 210, 212-213 (6th Cir. 1969). 2A Moore's Federal Practice par. 11.04, at 11-13 (2d ed. 1975). 5 C. A. Wright & A.R. Miller, Federal Practice and Procedure § 1335, at 508 (1969). Such facts here include the amount to be paid for the assets by the purchaser, and the amounts going to Fisher individually as a result of his personal contracts with Bretco. The inadequacy of the consideration to be paid for the assets may also have been a matter within the personal knowledge of the plaintiff, although the complaint contains no

---

[5] In addition to the verified complaint, the plaintiff filed the affidavit of his attorney, H. Mitchell Gould. However, because Gould's assertions as to the facts surrounding the sale and alleged diversion of funds were not made on his own personal knowledge, we do not consider them in deciding whether to grant summary judgment. *Shapiro Equip. Corp.* v. *Morris & Son Constr. Corp.*, 369 Mass. 968 (1976).

background information to support his conclusion on this issue. Nevertheless, for the defendant to prevail on a motion for summary judgment, he must show affirmatively that no material issue of fact exists. Mass. R. Civ. P. 56(c), 365 Mass. 824 (1974). Only one affidavit was filed by the defendants, it was by the defendant Cotton. It asserts, generally, that the transactions surrounding the sale were not intended to benefit Fisher at the plaintiff's expense. This general assertion is not sufficient, however, to overcome the similarly general allegations made to the contrary by the plaintiff. Nor does Cotton's affidavit contain any specific data that support a claim that the consideration paid for Madison's assets was adequate. This, therefore, remains a factual issue in the case, as does the principal question of whether part of the consideration for the sale was wrongfully diverted from the corporation and the plaintiff. These issues should be tried, and summary judgment is thus not warranted.

2. The defendants also argue that summary judgment was properly granted because the plaintiff failed to satisfy the requirements necessary for a minority shareholder to bring a derivative suit on a corporation's behalf.

Before he can maintain a derivative suit, a shareholder must make a demand on the directors that they cause the corporation to file the action itself. *S. Solomont & Sons Trust, Inc.* v. *New England Theatres Operating Corp.*, 326 Mass. 99, 113 (1950). If such demand is refused, the aggrieved shareholder must make the same request of the other shareholders. *Id.* These demands need not be made, however, if it is clear that they would be futile, such as in the situation where a majority of the directors and a majority of the shareholders were alleged wrongdoers or under the control of such wrongdoers. *Datz* v. *Keller*, 347 Mass. 766 (1964). *Independent Investor Protective League* v. *Saunders*, 64 F.R.D. 564, 570-571 (E.D. Pa. 1974). We believe that there was such futility here. Fisher not only voted for the corporate transaction that the suit seeks to rescind, but is the primary beneficiary of it. Since he

owns ninety per cent of the stock, a demand on the share-
holders would have clearly been futile. It is not as clear
that the same is true regarding a demand on the direc-
tors. Fisher was one of the directors, but we are unable
to find in the record either the identity of the other direc-
tors or how many others there were. We know only that,
pursuant to G. L. c. 156B, § 47, there must have been at
least one other. But we think that it can be inferred from
Fisher's control of the oustanding voting stock that the
directors would have acted in a manner favorable to his
interests. If the plaintiff can provide on remand more
specific support that such a demand on the directors
would have been futile, summary judgment is not war-
rantd on this ground.

When the normally required demands are not made
because they would be futile, Mass. R. Civ. P. 23.1, 365
Mass. 768 (1974), prescribes that the complaint "allege
with particularity . . . the reasons . . . for not making the
effort [of demanding]." No such allegation is made in the
complaint here. We do not deem this a ground for dismiss-
al, however, unless within thirty days the plaintiff fails
to amend the complaint so as to bring it into conformity
with the rule. See *Milstein* v. *Werner*, 54 F.R.D. 228, 230
(S.D.N.Y. 1972).

3. Prior to the filing of the complaint in this action, the
plaintiff entered into an agreement with Madison, one of
the provisions of which stated that the corporation would
reimburse the plaintiff for the expenses and fees of the
suit, regardless of its outcome. The defendants argue that
by reason of that agreement this suit is champertous and
should be dismissed. Champerty is "the unlawful main-
tenance of a suit in consideration of some bargain to have
part of the thing in dispute or some profit out of it, where-
upon the champertor is to carry on the party's suit at his
own expense," *McInerney* v. *Massasoit Greyhound Ass'n*,
359 Mass. 339, 348 (1971), quoting *Sherwin-Williams Co.*
v. *J. Mannos & Sons*, 287 Mass. 304, 312 (1934). A person
is entitled, however, to pay the legal expenses of another

if he does so because he has some interest in the litigation. *Reed* v. *Chase*, 238 Mass. 83, 86 (1921). *Call* v. *Calef*, 13 Met. 362, 365 (1847). Here Madison clearly had an interest in the plaintiff's suit, since if it ended in success the sale of the corporation's assets to Bretco would be rescinded and it would again be an operating concern. It was undisputed that Fisher himself had apparently changed his mind about the sale after the agreements had been signed and as a result sought this rescission. Additionally, Madison's promise to pay the expenses of the litigation was not made in consideration for a portion of any recovery; the benefits, if any, to Madison from the success of the plaintiff's litigation would accrue independently of the agreement to make such payments. This was not, therefore, a champertous agreement. We note further that, even if it were assumed that the agreement were champertous, it would be no defense to the suit brought here. That a defendant is being sued under a champertous agreement is not a defense to that action. 14 S. Williston, Contracts § 1713, at 866 (3d ed. 1972). 6A A. Corbin, Contracts § 1425 (1962).

4. The action of the Superior Court in granting the defendants' motions to dismiss and for summary judgment is reversed, and the case is remanded for further proceedings.

*So ordered.*