JOSEPH L. BROOME vs. RODMAN FORD SALES, INC.

Suffolk.    April 7, 1983. — June 21, 1983.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

Secured Transactions.    Motor Vehicle, Sale.

Under G. L. c. 255B, § 20B (e), and c. 106, § 9-504 (2), the surplus realized
    by a secured creditor and due the debtor on the disposition of the pro-
    ceeds of the sale of an automobile following its repossession should be
    computed on the basis of the fair market value of any trade-in vehicle
    together with cash received by the creditor, rather than the sale price
    listed on the bill of sale. [185-186]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 22, 1979.

A motion for summary judgment was heard by Forte, J.,
a District Court judge sitting under statutory authority.

Bradley C. Pinta for the defendant.
Richard B. Kirby for the plaintiff.

HALE, C.J.    The defendant, Rodman Ford Sales, Inc.
(Rodman), appeals from a summary judgment in favor of
the plaintiff, who, pursuant to G. L. c. 106, § 9-504(2),
sought to recover a surplus realized on the disposition of the
proceeds of the sale of an automobile following repossession.
The sole issue raised is how the surplus after foreclosure
should be computed.

The facts are undisputed to the following extent.    On
August 8, 1978, Rodman sold a 1976 Ford Granada Ghia to
the plaintiff for $4,795.    A "Massachusetts Automobile
Retail Installment Contract" was executed between the
plaintiff and Rodman to finance $2,300, the balance having
been paid by the plaintiff in cash and trade-in.    Under the
instalment contract, Rodman assigned all its rights to Ford
Motor Credit Company (Ford).    On June 4, 1979, Ford re-

possessed the Granada which, pursuant to a repurchase
agreement, was delivered to Rodman in return for
$2,012.98 paid by Rodman, representing the balance due
Ford from the plaintiff. Rodman thus acquired all rights
and duties of the secured party. G. L. c. 106, § 9-504(5). In
addition to the $2,012.98 Rodman incurred out-of-pocket
expenses totalling $632.74 to prepare the repossessed vehicle
for sale.

On August 13, 1979, Rodman sold the repossessed vehicle.
To effectuate the sale, Rodman accepted a trade-in vehicle
from the purchaser, with the bill of sale indicating a trade-
in allowance of $595 toward the gross sale price of $3,660.
The inventory value of the trade-in vehicle was listed in
Rodman's records as $35 and, correspondingly, in a docu-
ment used to calculate the surplus owing the plaintiff, the
trade-in overallowance of $560 was deducted from the
$3,660 gross sale price to reach the actual amount received
by Rodman for the collateral. From this $3,100 net figure
the repurchase costs and expenses of preparing the vehicle
for resale were deducted for a computed surplus owing to
the plaintiff of $424.23.

Subsequently, the trade-in vehicle was wholesaled by
Rodman for $25, and the surplus owing the plaintiff was re-
computed to $414.23. The briefs inform us that this
amount together with $30.05 credited Rodman by Ford (be-
cause of an overpayment in that amount by Rodman in re-
purchasing the plaintiff's vehicle) was paid by Rodman to
the plaintiff after judgment entered.

In support of his motion for summary judgment, the
plaintiff argued that the surplus should have been calcula-
ted on the basis of the listed sale price of $3,660 rather than
on that price, less the trade-in overallowance of $570 i.e.,
$3,090. A Superior Court judge allowed the plaintiff's mo-
tion, and judgment entered in favor of the plaintiff for
$1,249.28. In his order for judgment, the judge indicated
that amount was computed on the basis of a sale price of
$3,895.

We first note that there was no basis for computing surplus using a sale price of $3,895. Both parties agree that the sale price, even utilizing the full trade-in allowance, was only $3,660. The court apparently included as part of the sale price a $235 warranty that was sold with the car. Because the warranty was an item independent of the underlying collateral, it was not properly considered in determining surplus.

We conclude that under G. L. c. 255B, § 20B(e), and G. L. c. 106, § 9-504(2), the surplus due should be computed on the basis of the fair market value (at the time of the sale of the collateral) of any trade-in vehicle together with cash received by Rodman, rather than the sale price listed on the bill of sale. We therefore reverse the judgment.

The plaintiff is entitled to no more than the fair market value of his repossessed vehicle less the debt remaining due and the reasonable expenses of preparing his vehicle for resale. G. L. c. 255, § 20B(e)(1), and G. L. c. 106, § 9-504(1) &(2). The price listed on the bill of sale, however, does not necessarily reflect the fair market value of the vehicle. It is common knowledge that there is a significant range in which a dealer will be willing to adjust the sale price and trade-in allowance on any given car, in order to accommodate the requirements of a particular buyer. One buyer may be primarily concerned with obtaining a low sale price whereas another may be more interested in securing a high trade-in allowance. As long as the dollar a difference between the sale price and trade-in allowance remains the same, the value received by the dealer is the same, even though the listed sale prices may vary dramatically.

In this case, the trade-in allowance was inflated to induce the sale, and the sale price was similarly inflated. Thus, the bill of sale reflected a price higher than the fair market value of the vehicle, and higher than the dollar value actually received for the collateral by the creditor. To compute surplus on the basis of this listed price without a deduction for the trade-in overallowance would give the debtor a

windfall gain in the amount of the overallowance, and cause the creditor to be out of pocket this amount.

"A determination of surplus or deficiency on the basis of a trade-in allowance instead of market value could be equally unfair to the debtor whose vehicle was repossessed and sold. If upon the sale a trade-in vehicle was accepted and the amount allowed on the trade-in was below market value, it could result in a deficiency for which the debtor would be liable under the statute." *Webster* v. *General Motors Acceptance Corp.,* 267 Or. 304 (1973), overruled on other grounds sub nom. *Carlson* v. *Blumenstein,* 293 Or. 494 (1982).

In essence, we look to the cash equivalent to the dealer of the trade-in vehicle at the time it is received, assuming the dealer intends to dispose of the trade-in in a commercially reasonable manner.[1] By relying on the cash equivalent of the trade-in, rather than the trade-in allowance the dealer negotiated with the buyer, the creditor will be neither penalized nor benefited by taking a trade-in on a repossessed vehicle rather than strictly cash; nor will his method of marketing repossessed vehicles be unnecessarily restricted.

We, therefore, conclude that Rodman's method of calculating surplus owed the debtor was correct. Of course, there may be disagreement in this case as to whether the fair market value of the trade-in was, in fact, $25. If it is found that the fair market value of the trade-in vehicle at the time it was received was more than $25, the plaintiff would be entitled to the amount by which the fair market value exceeds it.

---

[1] Although not argued before us, another, and perhaps preferable, method of determining fair market value is set forth in G. L. c. 255B, § 20B(e)(2), as appearing in St. 1973, c. 629, § 3, which provides: "In a proceeding for a deficiency the fair market value of the collateral shall be a question for the court to determine. Periodically published trade estimates of the retail value of goods shall, to the extent they are recognized in the particular trade or business, be presumed to be the fair market value of the collateral."

Thus, a material issue of fact remains to be disposed of. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 218 (1978). The judgment is reversed, and the case is to stand for further proceedings in the Superior Court not inconsistent with this opinion.

*So ordered.*