**A & P TRUCKING, a Colorado corporation, Plaintiff-Appellant,**

**v.**

**PHIL LONG FORD, INC., a Colorado corporation, Defendant-Appellee.**

**No. 82CA1188.**

Colorado Court of Appeals,
Div. I.

Jan. 19, 1984.

1268

Julian H. Allen, Colorado Springs, for plaintiff-appellant.

Paul L. Murphy, Colorado Springs, for defendant-appellee.

PIERCE, Judge.

In this action to recover surplus monies resulting from the sale of a repossessed motor vehicle, plaintiff, A & P Trucking (A & P), appeals the trial court's order which dismissed A & P's claims against defendant, Phil Long Ford, Inc. (Ford). We affirm.

A & P purchased a tractor from Ford and the parties executed an automobile retail installment contract to finance the balance remaining after A & P made a cash down payment. A & P defaulted on the sales contract approximately two years after purchase. Thereafter, A & P received notice of repossession and right to redeem from Ford which set forth A & P's outstanding balance on the contract. Subsequently, Ford sold the repossessed vehicle.

The purchaser of the repossessed vehicle and Ford negotiated a price, and, as part payment, purchaser traded in two vehicles. The balance of the repossession sale price was apparently paid in cash. The trial court ruled that this was a "commercially reasonable sale." Section 4–2–706(1), C.R. S.1973.

A & P asserts a surplus accrued to Ford as a result of the repossession sale. It calculates the alleged surplus by subtracting its outstanding debt balance and allowable expenses for costs and repairs from the total repossession sale price, including the trade-in allowances.

By way of defense, Ford maintains that no surplus resulted from the repossession sale. It advocates the proposition that the repossession sale price must be reduced by the over-allowance given to purchaser on the trade-in vehicles, and from this amount, A & P's outstanding balance and expenses allowed must be subtracted. Ford concludes, after such calculation, that a slight deficiency results. Under the facts of this case, we agree with Ford.

The problem involved in this case is how to handle the accounting of the repossession sale when the transaction involves consideration partially paid in cash while the remainder is paid by trade-ins, as is frequently the case in transactions involving motor vehicles.

Various portions of the Uniform Commercial Code partially resolve the narrow question of law presented for review.

Section 4–9–504, C.R.S.1973 (1982 Cum. Supp.) sets forth a secured party's right to dispose of collateral upon a debtor's default. When a sale of goods is the chosen mode of disposition, such sale is governed by § 4–2–101, et seq., C.R.S.1973 (1982 Cum.Supp.).

The proceeds realized by the sale of collateral are applied, by statutory mandate, to meet expenses incurred and the outstanding debts held by both the secured party and any remaining junior lienholders. Sections 4–9–504(1)(a), (b), and (c), C.R.S. 1973 (1982 Cum.Supp.). The secured party, however, is under a duty to account for and pay to the debtor any surplus recovered. Section 4–9–504(2), C.R.S.1973 (1982 Cum.

Supp.) (Official Comment 3); *Reeves v. Associates Financial Services Co., Inc.,* 197 Neb. 107, 247 N.W.2d 434 (1976). Article II of the Code provides that a "person in a position of a seller," as a seller attempting to invoke certain remedies in the face of a buyer's breach, includes "anyone who ... holds a security interest ...." or a secured party. Sections 4–1–201(37) and 4–2–711(3), C.R.S.1973 (1982 Cum.Supp.). Therefore, when invoking the remedy of resale or contract for resale in the face of breach of contract, a secured party must account for either an excess or a deficiency. Section 4–2–706(6), C.R.S.1973. Nothing in the record indicates that the trial court did not apply this statutory procedure.

A & P would have us calculate the repossession price by including the trade-in allowance or credit given. To place this burden on Ford, however, would be inequitable. As stated in *Webster v. General Motors Acceptance Corp.,* 516 P.2d 1275, 267 Or. 304 (Ore.1973), which is cited by A & P:

"To determine whether a surplus existed by using the trade-in allowance instead of the actual market value of the trade-in vehicle would be unrealistic and potentially unfair to both the debtor and the seller. In the instant case, plaintiff paid $23,500 for the truck he purchased from defendants. Five months later, after plaintiff defaulted, the same truck was sold by Goodwin Bros. for $29,056 which included the trade-in allowance of $7,561. It is impractical to assume the truck increased approximately $6,000 in value during a five month period."

Some states have adopted the view that the secured party is neither required to make an accounting for surplus nor allowed to seek a deficiency until all of the trade-ins, or credit resales, are eventually sold for cash, or until the entire transaction is reduced to cash. *See Elster's Sales v. El Bodrero Hotel, Inc.,* 250 Cal.App.2d 258, 58 Cal.Rptr. 492 (1967); *R. Anderson, Uniform Commercial Code* § 9–504:29 (1971). We reject this interpretation of the UCC. The UCC does not specifically require delay between repossession sale and accounting. Further, in many instances, application of such a rule would result in the creation of duties for all parties and would frequently, therefore, postpone the final accounting and payment of either the deficiency or surplus for several years because of successive trade-ins.

■ We believe the proper measure here should be a variation of the formula set forth in *Webster v. General Motors Acceptance Corp., supra.* That method is to subtract the trade-in allowance from the contract price on sale of the repossessed vehicle. Add to this amount the fair market value of the trade-in vehicle received at the time of the repossession sale and subtract from this total the debt owed by the plaintiff and the costs of preparation and sale expenses of the repossessed vehicle.

If the trade-in vehicle or vehicles are sold shortly after the repossession sale for cash, this amount would be strong evidence of the fair market value at the time of the repossession sale. However, fair market value of the trade-ins at the time of the repossession sale could also be determined by expert testimony, as was done in this case.

■ Therefore, inasmuch as the above formula was applied here, we rule that the trial court properly determined that there was no surplus due plaintiff.

Because of our disposition in this case, it is not necessary to discuss the other allegations of error which are all without merit.

The judgment is affirmed.

BERMAN and METZGER, JJ., concur.