Mark L. HOLT, Plaintiff-Appellant,

v.

ELLSWORTH FARMERS UNION CO-OP,
Defendant-Respondent.

Court of Appeals

*No. 83–965. Submitted on briefs January 9, 1984.—
Decided March 6, 1984.*
(Also reported in 347 N.W.2d 612.)

For the appellant the cause was submitted on the briefs of *Edward F. Vlack* and *Davison & Vlack* of River Falls.

For the respondent the cause was submitted on the brief of *Robert L. Loberg* and *Swanson, Loberg & Clark* of Ellsworth.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J.   Mark Holt appeals from a deficiency judgment against him and in favor of the Ellsworth Farmers Union Co-op. Holt borrowed money from the Co-op to buy a truck. After he defaulted on the loan, the Co-op repossessed the truck and sold it for cash and three trade-in vehicles. Holt contends that the truck's sale price was the cash received, plus the allowance given for the trade-in vehicles when the Co-op received them rather than the sale price of the trade-ins. This would result in a surplus rather than a deficiency. Holt also contends that a portion of the Co-op's claimed expenses were not commercially reasonable and necessary and that, if the sale price of the trade-ins is to be considered, the truck and the trade-in vehicles were not sold in a commercially reasonable manner. Although we conclude that the truck's sale price equals the cash received plus the fair market value of the trade-in vehicles, we reverse the judgment because the truck was not sold in a commercially reasonable manner.

After the Co-op repossessed the truck,[1] it eventually found a buyer, Rex Stockman.[2] Stockman offered $4,250 in cash and three trade-in vehicles, which the Co-op valued at $12,750. Holt's father, Marshall, approached the Co-op before it signed a sales contract with Stockman

---

[1] The Co-op financed Holt's loan through another credit corporation, which reassigned the security (the truck) to the Co-op upon the Co-op's payment of the balance due on the loan.

[2] Holt concedes that the Co-op's efforts to find a buyer were commercially reasonable.

and offered to buy back the truck. He was told that Stockman was purchasing the truck for $17,000. Stockman purchased the truck, and the trade-in vehicles were later sold for $6,350. This amount, plus the cash Stockman paid, gave the Co-op $10,600 in cash realized for the repossessed truck and left Holt with a deficiency of $2,559.59.[3]

The amount the Co-op realized on the sale of the truck was the cash received plus the fair market value of the trade-in vehicles at the time the truck was sold. Holt claims that the truck was sold for $17,000, the price listed on Stockman's bill of sale. Holt is entitled, however, to no more than the fair market value of the truck, less the debt due and the reasonable expenses incurred to prepare the truck for resale. Since vehicle trade-in allowances are often inflated or deflated in relation to actual value, computing a surplus or deficiency on the listed trade-in allowance would give the debtor a windfall when the allowance is above market value and give the secured party a windfall when it is below market value. *See Broome v. Rodman Ford Sales, Inc.,* 450 N.E.2d 633, 635 (Mass. App. 1983) ; *Webster v. General Motors Acceptance Corp.,* 516 P.2d 1275, 1277 (Or. 1973). The sale price, therefore, must be calculated using the fair market value of the trade-in vehicles at the time they were received.

The sale prices of the truck and the trade-in vehicles reflect their fair market values at the time the truck was sold. These trial court findings are supported by the record and are not clearly erroneous. *See* sec. 805.17(2),

---

[3] The trial court allowed a deficiency judgment of $3,559.59, but both parties agree that the trial court made a mathematical error and that the amount should be $2,559.59. Holt owed $13,159.59 (debt plus expenses), less the $10,600 from the truck's sale, leaving a $2,559.59 deficiency.

Stats. The court's finding that the Co-op's expenses were commercially reasonable and necessary is also supported by the record and is not clearly erroneous. *See id.* None of the evidence effectively challenges the reasonableness of either the sale prices or the expenses.

The sale of the truck to Stockman for $10,600 was not commercially reasonable because Marshall Holt's offer to buy back the truck, if accepted, would have resulted in no deficiency. Section 409.504, Stats., controls the secured party's sale of collateral after default. Subsection (3) of that statute states in part:

Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition . . . must be commercially reasonable.

The trial court found that the sale to Stockman was commercially reasonable. This determination of a fact depends upon the surrounding facts and circumstances. *Appleton State Bank v. Van Dyke Ford, Inc.*, 90 Wis. 2d 200, 205, 279 N.W.2d 443, 445 (1979). The secured party, however, owes a duty to the debtor to obtain the best price for the security. *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis. 2d 106, 111, 203 N.W.2d 728, 731 (1973). Marshall Holt testified that, on October 16, 1980, he offered to buy the truck back. The only reasonable inference we can make from Marshall's offer is that he offered to pay the amount Mark owed on the debt, plus the Co-op's expenses, to buy back the truck. Since the sales contract with Stockman was signed on October 29, 1980, Marshall's undisputed testimony shows that the Co-op refused his offer before it was legally obligated to sell the truck to Stockman. The Co-op's duty to Holt required it to accept an offer that would satisfy his debt rather than take the chance of incurring a deficiency by

making a deal that included unrealistic trade-in allowances. Under these conditions, the sale to Stockman was not commercially reasonable.

Our decision eliminates any deficiency against Holt. Holt, however, is not due any surplus because there was no evidence to show that, were the truck sold in a commercially reasonable manner, a surplus would result. Without the offer from Marshall, the Co-op's sale to Stockman for $10,600 would have been commercially reasonable. No surplus would exist if the Co-op had accepted Marshall's offer to buy back the truck. Since there was no evidence of any offers other thån Marshall's and Stockman's, no surplus is due Holt.

*By the Court.*—Judgment reversed and cause remanded to the trial court for further action consistent with this opinion.