Hinkle, J.
The plaintiff, Newbuiyport Five Cents Savings Bank (the “Bank”) brings this deficiency action against defendant John E. MacDonald (“MacDonald”) to recover $554,276.14. MacDonald was a guarantor[1] and comaker of five promissory notes to the Bank, each secured by a mortgage on real property located in New Hampshire. The defendant concedes that he defaulted on the promissoiy notes at issue. However, he claims that this action is barred by the applicable statute of limitations, and that the foreclosure sales on the mortgaged properties were not conducted in a commercially reasonable manner. The defendant moved for summary judgment or, in the alternative, for dismissal.[2] The plaintiff filed a cross-motion for partial summary judgment.[3] For the reasons stated below, the defendant’s motion is DENIED and the plaintiffs motion is ALLOWED.
BACKGROUND
The Bank foreclosed on five properties owned by MacDonald in May of 1992. The Bank commenced this action on May 8, 1995, seeking to recover deficiencies based upon the promissoiy notes. Given the nature of the claims raised by the defendant, a detailed description of the five transactions is warranted.
The promissory note at issue in Count I was executed by the defendant on November 23, 1987. The mortgagors and coexecutors of the note were MacDonald and Stephen Mellow, in their capacity as trustees of the Pinkham Realty Trust. A separate guarantee was executed by MacDonald and Mellow in their personal capacity. MacDonald agreed under the note to pay $318,000 plus interest to the Bank on or before November 23, 2002. The Bank foreclosed its mortgage and sold the real estate on May 26, 1992 for $232,000.
The mortgage at issue in Count I contained the following clause:
15. Uniform Mortgage; Governing Law; Severability . . . This Mortgage shall be governed by the law of the Jurisdiction in which the Property is located ...
The promissory note at issue in Count II was executed by the Bank on October 14, 1988, The mortgagor and coexecutor of the note was MacDonald in his capacity as trustee of the Powwow River Realty Trust. MacDonald cosigned the note in his individual capacity. MacDonald agreed under the note to pay the Bank $130,000 plus interest on or before October 14, 2003. The Bank foreclosed its mortgage and sold the real estate at a foreclosure auction on May 28, 1992.
The promissory note at issue 'in Count III was executed by the Bank on April 11, 1990. The mortgagors and coexecutors of the note were MacDonald and Mellow in their capacity as trustees of the Brown’s Ridge Road Realty Trust. MacDonald and Mellow cosigned the note in their individual capacity. MacDonald agreed under the note to pay the Bank $185,000 plus interest on or before April 11, 2005. The Bank foreclosed its mortgage and sold the real estate at auction on May 22, 1992.
The promissory note at issue in Count IV was executed by the Bank on July 21,1988. The mortgagor and coexecutor of the note was MacDonald in his capacity as trustee of the Barberry Brook Realty Trust. MacDonald cosigned the note in his individual capacity. MacDonald agreed under the note to pay the Bank $332,500 plus interest on or before January 21,2004. The Bank foreclosed its mortgage and sold the real estate at auction on May 28, 1992.
The mortgages at issue in Counts II, III and IV contained the following clause:
15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located . . .
The promissoiy note at issue in Count V was executed by MacDonald in his personal capacity on Feb-ruaiy 19, 1987. The Bank foreclosed its mortgage and sold the real estate at auction on May 23, 1992.[4]
The four promissoiy notes that remain as subjects of controversy contain the following provision:
10. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the “Security Instrument”), dated the same date as this Note, protects the Note Holder from possible losses which might result if [the executors] do not keep the promises which [they] make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows . . .
DISCUSSION
This Court allows summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating both elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demon *679 strate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion.” Pederson, supra at 17, The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
Ml four of the mortgages that remain the subject of this action contain a choice-of-law provision,[5] indicating that the drafters preferred that the mortgages be interpreted according to the law of the jurisdiction in which the mortgaged property is located. Under the law of Massachusetts, contractual choice-of-law provisions are upheld if the result is not contrary to public policy, and the chosen state has some substantial relationship to the contract, Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253 (1977); Warren Bros. Co. v. Cardi Corp., 471 F.2d 1304 (1st Cir., 1973).
As a preliminary matter, the Court must determine whether the limitations period governing these four actions is that enacted in Massachusetts or that enacted in New Hampshire.[6] Applying the Steranko test, I determine that the application of the New Hampshire statute of limitations to the four notes at issue would not contravene Massachusetts public policy, and that New Hampshire has a substantial relationship to the mortgage note under which these suits are brought.[7] Steranko v. Inforex, Inc., supra.
Turning first to the public policy issues, the court notes that these four deficiency actions concern mortgages of real property located in New Hampshire. New Hampshire, the site of that property, has a stronger interest than Massachusetts in ensuring that the formalities of foreclosure were followed and in applying the correct statutes of limitations to these deficiency actions.
Moving to the second part of the test, the determination of whether New Hampshire has a substantial relationship with the contract at issue, it is important that the mortgage itself does not specify the choice of the law of New Hampshire; it instead reveals a preference for the law of the state in which the mortgaged property is situated. Such a state cannot but have a substantial relationship with the subject of the action.
The facts here are different in a critical way from those of Gourdeau Construction, where the Supreme Judicial Court applied a Massachusetts limitations period to a contract action based on a construction site in New Hampshire. New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc., supra. There, the court interpreted a construction contract executed by two Massachusetts corporations. The only point of relationship between New Hampshire and the controversy arose from the fact that the construction site at the heart of the contract was located in that state. Here, although the facts at first appear superficially similar, there are two crucial differences. First, this action is more firmly grounded in the question of the rights of the parties to an interest in real property than that of Gourdeau Construction: although this action is formally based on four promissory notes, it also relates to four mortgage conveyances and to the mortgaging parties’ interests in New Hampshire real property. Second, the mortgages at issue here, unlike the contract at issue in Gourdeau Construction, contain a choice-of-law clause evidencing the parties’ preference that their obligations be determined under New Hampshire law which is incorporated by reference into the notes.
Turning now to the substantive issues of the case and having examined the laws of New Hampshire, I find and rule that, while the limitations periods governing all four deficiency actions are still running, the limitations periods concerning the defendant’s claims concerning procedural irregularities in the Bank’s conduct of the foreclosure sales have expired.
Mortgage foreclosure actions are subject to a 20-year statute of limitations under New Hampshire law. N.H. Rev. Stats. 508:2;[8] Phinney v. Levine, 116 N.H. 379 (1976). In New Hampshire, actions may be brought under mortgage notes “so long as plaintiff is entitled to bring an action upon the mortgage.”[9] N.H. Rev. Stats. 508:6. This statute has been interpreted as extending the ability of a plaintiff to sue on a mortgage-secured promissory note beyond the standard six-year period allowed on suits to enforce such notes. Jenot v. White Mountain Acceptance Corp., 124 N.H, 701 (1984).
In contrast, a claim under New Hampshire law “challenging the form of notice, manner of giving notice, or the conduct of the foreclosure sale” must be brought within one year and one day of the date of the recording of the foreclosure deed.[10] While all four of the foreclosure sales relevant to this action were held in May of 1992, the Bank did not institute this action for deficiency until May of 1995. Therefore, the defenses raised by MacDonald concerning the form and procedure of the Bank’s foreclosing upon the four relevant properties are barred by the expiration of the limitations period.
The defendant asserted in his answer the affirmative defense that “(the Bank] failed to conduct the foreclosure sales in a commercially reasonable manner.” The Court does not reach the question of which *680 New Hampshire statute of limitations governs this particular claim or defense as the defendant has failed to convince the Court that he has a reasonable expectation of proving this defense at trial, and, therefore, summary judgment on the question of liability will be granted for the plaintiff.[11]
New Hampshire requires a party to produce more than a bare allegation of insufficient price to commence an action on such a claim that a mortgagee failed to conduct a foreclosure sale in a commercially reasonable manner. Bascom Construction Inc. v. City Bank and Trust, 137 N.H, 472 (1993). New Hampshire in fact requires a claimant pursuing this type of action either to produce evidence of specific negligence or bad faith on the part of the party conducting the foreclosure sale or to show that the price at which the property sold was so low as to shock the conscience. Id. at 475. MacDonald cannot prevail at the summary judgment stage as the sole evidence he has produced is in a self-serving affidavit in which he sets forth the alleged value of sand and gravel on the properties (in every case MacDonald asserts that the sand and/or gravel on each property was worth more than the property sold for at the foreclosure sale). MacDonald has not shown how the fair market value of quantities of the sand and gravel could be within his personal knowledge. His affidavit is silent as to any explanation of his competence to testify at trial on the fair market value of quantities of sand and gravel, and he has not provided the Court with any facts qualifying him as an appraiser of real property or sand and gravel. His assertions concerning the sand and gravel are therefore conclusory and self-serving and will not be considered by the Court. See, e.g.: Botschafter v. F.D.I.C., 33 Mass.App.Ct. 595, 596-97 (1992): Sweda Intern., Inc. v. Donut Maker, Inc., 13 Mass. App. Ct. 914 (1982), Pupecki v. James Madison Corp., 376 Mass. 212 (1978).
Besides the allegations concerning the sand and gravel, MacDonald’s affidavit is limited to conclusory pronouncements concerning the unreasonably small proceeds of the foreclosure sales and vague allegations that the Bank has not fully credited MacDonald for payments made on the mortgages unaccompanied by factual details of any of MacDonald’s past .payments, As MacDonald’s affidavit fails to provide any facts in support of his defense, the plaintiffs motion for partial summary judgment motion will be ALLOWED as to liability.
ORDER
For the foregoing reasons, plaintiff Newburyport Five Cents Savings Bank’s motion for partial summary judgment is ALLOWED as to liability, and defendant John E. MacDonald’s motion for summary judgment is DENIED.,

He signed a guarantee to one note and executed each of the others both as a Trustee and individually.

Because I have reviewed affidavits in connection with the pending actions, I treat it as one for summary judgment.

The plaintiff concedes the expiration of the limitations period applicable to the fifth mortgage note. As a result, the plaintiff moves for summary judgment on the first four counts only.

The Bank concedes that the Statute of Limitations has run on the claim at issue in Count V, and that claim is hereby dismissed.

The promissory notes that are the subjects of this action do not contain a choice-of-law provision. However, I determine that the language of Section 10 of the notes incorporates by reference some of the critical terms of the mortgages, including the preference announced therein by the mortgagor and mortgagee that the mortgage be governed by the law of New Hampshire. Consequently, I rule that the choice-of-law provisions of the mortgages are incorporated into the Adjustable Rate Note agreements that are before the Court.

Massachusetts now permits the statutes of limitations of other jurisdictions to be applied in its Courts. New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc., 419 Mass. 658 (1995).

While the test enunciated in Steranko was designed for actions on contracts, as opposed to actions on conveyances or grants of real property, the appellate courts have not enunciated any policy preventing the use of the Steranko test where the disputed action concerns a conveyance of real property, and the language of the deed includes a choice-of-law provision. The policy of the Commonwealth regarding conflicts of law questions involves weighing the interests of the conflicting states in the cause of action, The interest of a state whose real property is the sub) ect of an action is stronger than the interest of a neighboring or abutting state whose land is not the subject of the action. Such a policy would encourage the Court to rule in this issue as it has: enforcing the choice-of-law provision and thereby applying New Hampshire law to this action which centers around the foreclosure of mortgages on New Hampshire property.

New Hampshire Revised Statutes 508:2 states:
Real Actions. No action for the recovery of real estate shall be brought after 20 years from the time the right to recover first accrued to the party claiming it or to some persons under whom he claims.

New Hampshire Revised Statutes 508:6 states:
Mortgage Notes. Actions upon notes secured by a mortgage of real estate may be brought so long as the plaintiff is entitled to bring an action upon the mortgage.

New Hampshire Revised Statutes 479:25 11(a) states;
No claim challenging the form of notice, manner of giving notice, or the conduct of the foreclosure sale shall be brought by the mortgagor or any record lienholder after one year and one day from the date of the recording of the foreclosure deed of such sale.

The defendant asserts in his affidavit that the Bank has made mathematical mistakes in the calculation of interest, and that this has resulted in the Bank’s claimed damages amounting to a higher value than the Bank is entitled to. The Court therefore grants summaiy judgment on the issue of liability only and reserves the question of damages to a future evidentiary hearing.