Greco, PJ.
The plaintiff, Eye Think, Inc. (“Eye Think”), is in the business of providing art management services for its customers. The defendants identify themselves as the individual, Lydia Lopoukhine (“Lopoukhine”); as the corporation, LFA Art Management, Inc., which has not existed since 1998;[2] and as the limited liability company, LFA Art Management, LLC.
In its verified complaint,[3] Eye Think alleged that Lopoukhine operates under her own name as well as under the name of LFA Art Management, Inc., even though that corporation had been dissolved by the Commonwealth in 1998. Thereafter, she formed a limited liability company, to wit, LFA Art Management, LLC. Notwithstanding these labels, Eye Think alleged that “at all relevant times [Lopoukhine] [has] act[ed] in her personal capacity... while at times purporting to act in the name of ... LFA Art Management, Inc.” or the LLC. Eye Think further alleged that Lopoukhine and these entities “h[e]ld themselves out as providing art consultation services, including the procurement, delivery, and installation of artwork,” and that the defendants “engaged... Eye Think, Inc. for agreed-upon compensation to create and install a certain work of original animating art” at the location of one of its customers. Eye Think did the work, but it was not paid by any of the defendants. Eye Think thus alleged that “the sum certain of $22,011.74 [remains] unpaid.”
Eye Think further alleged that on July 9, 2012, LFA Art Management, Inc. (with Lopoukhine as president) entered into a “Conditional Settlement Agreement and Agreement for Judgment,” whereby LFA Art Management, Inc. agreed “to pay Eye Think the sum of $22,011.74” and also agreed “not to protest any collection efforts by Eye Think.” In return, Eye Think agreed to a payment plan, whereby the defen *135 dants would pay $7,500.00 by July 16,2012, followed by three payments of $4,837.25 each by August 15, September 15, and October 15,2012. No payments in any amount have been made. Consequently, Eye Think, pursuant to its complaint, sought damages for breach of contract and conversion.
Thereafter, on August 15, 2012, the trial court entered judgment for Eye Think against Lopoukhine as an individual, the dissolved corporation, and the LLC in the amount of $22,011.74. Shortly thereafter, however, Lopoukhine filed a motion to vacate that judgment, which was allowed on October 23,2012. On November 6,2012, new counsel entered an appearance for the corporation and the LLC. After a case management conference was held, cross motions for summary judgment were filed by Eye Think and Lopoukhine. On October 31, 2013, Eye Think’s motion for summary judgment against Lopoukhine as to her personal liability was denied, and Lopoukhine’s cross motion for summary judgment was allowed. This appeal followed.
On summary judgment, Lopoukhine spelled out her position in an affidavit, dated September 25, 2013. In it, she stated that she formed LFA Art Management, Inc. “[o]n or around May 14, 1992,” and acted as its president. “In or around August 2011,” she entered into the above-mentioned contract with Eye Think. “At the time of the contract, [she] believed that LFA Art Management, Inc. was still in existence” (emphasis added). She further averred that “[sjeveral months later, [she] learned for the first time that LEA Art Management, Inc. had been involuntarily dissolved by the Commonwealth... on August 31,1998.”[4] Thereafter, on the advice of a colleague, she formed a limited liability company with the intent “to continue the same business [she] had been conducting under LFA Art Management, Inc.” Apparently, she did not consider reviving the dissolved corporation.[5] Instead of doing so, she chose to form a different entity that could not be found liable for any debt owed to Eye Think.
As noted above, Eye Think’s position was outlined in its verified complaint. As the moving party, Eye Think had to “show that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995), quoting Mass. R. Civ. R, Rule 56(c). “The fact that both parties moved for summary judgment does not mean that no material factual issue remained. ” Bernard J. Basch & Sons v. Travelers Indem. Co., 392 Mass. 1002, 1003 (1984). We also note, however, that the Supreme Judicial Court has stated that “[t]he granting of summary judgment in a case where a party’s state *136 of mind or motive constitutes an essential element of the cause of action is disfavored.” Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1984). See also Mulford v. Mangano, 35 Mass. App. Ct. 800 (1994), where the Appeals Court stated that in such a case, “summary judgment is rarely appropriate.” Id. at 804. Moreover, “[wjhen considering a motion for summary judgment, the judge should not consider the credibility of the witnesses or the weight of the evidence, nor should the judge make findings of fact.” Riley v. Presnell, 409 Mass. 239, 244 (1991), citing Attorney Gen. v. Bailey, 386 Mass. 367, 370 (1982).
Here, however, Lopoukhine has had the opportunity for a long period of time to revive LFA Art Management, Inc. Instead of doing so, she chose to form a limited liability company, an act that could be construed as an attempt to avoid any damages owed to Eye Think. Originally, G.L.c. 156B, §108 provided that any attempt to revive a corporation had to be within five years after it had been dissolved. See St. 1964, c. 723, §1. In its current form, there is no such restriction. In Barker-Chadsey Co. v. W. C. Fuller Co., 16 Mass. App. Ct. 1 (1983), cited by Lopoukhine, the Appeals Court noted that in his report, a master had found that when the treasurer of the defendant corporation executed a note, “she did not know that [the corporation] had been dissolved; she believed the corporation was ongoing, and she did not intend to make the note as an individual.” Id. at 2-3. However, as noted above, Lopoukhine formed LFA Art Management, Inc. and “acted as president,” as opposed to a less important corporate officer with limited responsibilities. In any event, Lopoukhine never made any effort to revive essentially her corporation. Instead of doing so, she chose to form an LLC that could not be found liable to Eye Think. See G.L.c. 156D, §2.04, which provides that all “persons purporting to act as or on behalf of a corporation, knowing there was no corporation under this chapter shall be jointly and severally liable for all liabilities created while so acting.”
As the above discussion reflects, Lopoukhine ran the corporation as president; she was the one who was required to file annual reports to the Secretary of State; she was the one who would have been notified that the corporation was being dissolved; and she was the one who chose not to seek revival. Finally, there is no factual issue with respect to whether money is owed to Eye Think. Lopoukhine admits as much in the contents of the “Conditional Settlement Agreement and Agreement for Judgment.”
Accordingly, based upon the above, we conclude that it was error to deny Eye Think’s motion for summary judgment, and instead to allow Lopoukhine’s cross motion for summary judgment. Summary judgment is to be entered for the plaintiff. The judgment entered for the defendant is vacated, and the matter is remanded to the Cambridge District Court for any further proceedings.
So ordered.

 The corporation appears to have been formed in May, 1992.

 Actually, it is labeled “Complaint with Agreement for Judgment,” but contains no such agreement. See Pupecki v. James Madison Corp., 376 Mass. 212, 217 (1978).

 See G.L.c. 156B, §101, providing that upon dissolving a corporation, the Secretary of State “shall give the corporation at least ninety days notice of the proposed dissolution, and shall send a copy of the notice to the commissioner of revenue.”

 See G.L.c. 156B, §108, providing that “ [i]f the state secretary finds that the existence of a corporation has terminated in any manner..., he may, upon application by an interested party, file in his office a certificate ... reviving such corporation. ... Upon the filing of a certificate reviving a corporation for all purposes, said corporation shall stand revived with the same powers, duties and obligations as if it had not been dissolved....” (emphasis added).