## Blackburn et al. v. National Union Indemnity Co., Inc., et al.

May 14, 1946.

Vincent & Vincent for appellants.

L. M. Ackman and Will H. Fulton for appellees.

Opinion of the Court by Van Sant, Commissioner —Affirming.

The appeal is from a judgment sustaining a demurrer to and dismissing appellants' petition, which seeks a declaration that a purported deed actually is a mortgage, and to compel the conveyance of the property therein described to appellants, upon the payment of $19,000, the amount for which the property was sold by appellee, National Union Indemnity Company, to appellee, O. L. Mitts.

In the year 1935, the Indemnity Company executed a supersedeas bond in the sum of $32,298.31, for and on behalf of appellants, for the purpose of enabling them to prosecute an appeal from a judgment rendered against them by the Fayette Circuit Court. The judgment was affirmed, and the Indemnity Company became liable on the bond. In order to secure it against loss by reason of the execution of the bond, appellants executed and delivered to it two mortgages covering real estate in Fayette and Grant Counties. On the 15th day of June, 1937, appellants executed to the Indemnity Company an instrument of writing which purports to be an absolute deed to the property in Grant County; and simultaneous therewith, the parties entered into the following contract:

"This Agreement, made and entered into this 15th day of June, 1937, by and between the National Union Indemnity Company, or assigns, a Corporation, having its principal office at Pittsburgh, Pennsylvania, party of the first part, and Vevie Blackburn, the widow of E. R. Blackburn, deceased, and W. P. Blackburn and Roberta B. Kuykendall, sole heirs at law of E. R. Blackburn, deceased, parties of the second part,

"Witnesseth:

"That, whereas the party of the first part having satisfied the judgment rendered in the Fayette Circuit Court in the case of Union Bank and Trust Company v. E. R. Blackburn et al., from which judgment an appeal was taken to the Court of Appeals of Kentucky, and the

judgment affirmed, and has also paid, for and on behalf of the parties of the second part, debt, interest, costs, counsel fees, taxes and other expenses incurred in the suits instituted by said Bank for the recovery of said judgment, amounting to the total sum of $44,866.16, and

"Whereas, the parties of the second part having conveyed by fee simple deeds to the party of the first part certain tracts of land in the City of Lexington, Kentucky, and certain tracts of land in Grant County, Kentucky, which said tracts of land are fully described in said deeds, to which reference is made for a more particular description thereof; and

"Whereas, said deeds have been made to said party of the first part in consideration of satisfaction by the said party of the first part of judgment rendered in the Fayette Circuit Court in the case of Union Bank & Trust Company vs. E. R. Blackburn, et al. and all costs and expenses incurred in connection therewith, as referred to above.

"It is now agreed between the parties hereto that said land shall be handled and sold by the party of the first part, upon the following terms, towit:

"1. Said party of the first part agrees to make diligent effort to sell said property at a price satisfactory to a majority of the parties of the second part, within the period of two and one-half (2½) years from this date, and if said property is not sold at private sale at a price satisfactory to the parties hereto on or before December 31, 1939, then first party may sell the same at public or private sale.

"2. Any offer received for the purchase of said property, or any part thereof, by either of the parties hereto shall be submitted in writing to the other parties to this agreement, for the purpose of approval. If said party of the first part secures an offer for the sale of said property, or any part thereof, and a majority of the said parties of the second part decline in writing to agree to the sale of said property under the terms of said offer, then said parties of the second part shall be given the opportunity of securing a better offer for said property, and if said parties of the second part are able to secure within thirty (30) days after notice of the offer to said party of the first part, an offer acceptable to the party of the first part, then said party of the first

part agrees to make all said conveyance in accordance with said better offer. If said parties of the second part should receive an offer for the purchase of said property, or any part thereof, said offer shall be at once submitted in writing to the party of the first part, but said sale in accordance with the offer obtained by the parties of the second part shall not be made, unless acceptable to the party of the first part.

"3. The party of the first part shall collect the rents on the real estate in the City of Lexington, Kentucky, which rent shall be applied to payment of taxes, repairs, insurance and upkeep of said property, and the balance, if any, applied to payment of interest on the sum advanced. In lieu of rent on the farms in Grant County, Kentucky, second parties agree to pay quarterly, beginning June 15, 1937, to first party, the sum of Seven Hundred and Fifty ($750.00) Dollars per annum, during such time as second parties may retain possession of the farm properties; Provided, however, that first party will not sell the Grant County Farms before March 1, 1939, so long as second parties conform to the terms of this contract, and if the farms be not sold on March 1, 1939, first party will not sell them until the expiration of this contract on December 31, 1939, which sum shall be applied by the first party to payment of taxes, insurance, repairs, and interest as above stated. In event the sum remaining from rent received by party of the first part on the real estate in the City of Lexington, Kentucky, plus the Seven Hundred and Fifty ($750.00) Dollars per annum paid by the second party in lieu of rent on the farms in Grant County, Kentucky, after deduction of expenses incurred, including taxes, repairs, insurance, upkeep and any other disbursements, shall not be sufficient to equal three (3%) per cent interest on the total amount advanced by the party of the first part as above stated, then such difference shall be added to and become a part of the sum advanced by the party of the first part. If said remaining sum exceeds 3% of said sum advanced, such excess shall be applied to the payment of interest to said first party up to a rate not in excess of five (5%) per cent, and excess above five (5%) to be applied as a credit on the sum advanced. In the event second parties fail to pay rental on the farms in Grant County, Kentucky, within three months after the same becomes due, as herein provided, all of

their rights under this entire contract shall cease and determine, and they shall thereupon surrender and deliver up to the party of the first part full and complete possession of said premises.

"4.  All payments made to the party of the first part, by reason of the sale of said property, or any part thereof, shall be credited as of the date of payment upon the obligations paid by the party of the first part, for and on behalf of the parties of the second part, as herein set out.

"5.  After the sale of all of said property, if it shall become necessary to sell all of said property, the excess if any, shall be paid to Mrs. Vevie Blackburn, as her sole and separate estate, on account of the surrender by her of her dower in said property, at the time of the execution of the supersedeas bond by the party of the first part.  If it shall not become necessary to sell all of the said property, for the purpose of satisfying said obligation, the balance of said property remaining unsold shall be conveyed by the party of the first part to said Mrs. Vevie Blackburn in fee simple.

"6.  It is understood and agreed between the parties hereto, that the sum of money advanced by first party for second parties does not in any wise constitute a personal debt from second parties to first party and there is no obligation upon second parties to pay said sum, or any part thereof, to first parties, other than herein provided.  The sole purpose of this agreement, being that if the entire amount advanced by first party, on account of second parties as above set out, has been paid to first party, together with interest as hereinbefore provided, from the sale of all or any part of the properties herein referred to, or otherwise, then first party will convey all or any part of the properties remaining to Mrs. Vevie Blackburn, upon the terms stated herein.

"In Testimony Whereof, the parties hereto have hereunto set their hands, this, the day and year first above written.

"National Union Indemnity Company,
By J. M. Thomas    President
Vevie Blackburn
W. P. Blackburn
Roberta B. Kuykendall".

The first and second numbered paragraphs of the contract provide for the manner in which a sale of the property might be had. The third numbered paragraph provides for leasing the property to appellants. The contract of lease, by the terms of the written agreement, expired December 31, 1939. The property remained unsold on that date; and, by oral agreement, the lease was extended from time to time, and finally to March 31, 1944. In the meantime, to-wit, September 27, 1943, the Indemnity Company sold the property to appellee Mitts, subject to the right of appellants to occupy it until March 31, 1944. At the expiration of that period of time, appellants refused to give possession of the property, and demanded the right to repurchase for the sum of $19,000. When appellees refused to comply with this demand, appellants brought this action.

The question of whether the purported deed executed June 15, 1937, when considered in the light of the agreement executed on that date and set out above, is an absolute deed or a mortgage, is one about which reasonable minds may differ. But, whether a deed or a mortgage, the written agreement granted to the Indemnity Company the absolute power to sell and convey the property. This power, for the two and one-half years next following the execution of the agreement, could be exercised only with the consent of appellants; but thereafter the right of the Indemnity Company to exercise the power without appellants' consent or notice first being given was absolute. The purpose of entering into the agreement was to provide a manner in which the property could be converted into cash for the further purpose of liquidating the debt appellants owed to the Indemnity Company, and to perform these acts without the necessity of formal foreclosure proceedings. Thus, if the purported deed should be construed merely to be a mortgage, the exercise of the power of sale constituted merely a contractual foreclosure of the mortgage. Of course, if the purported deed should be construed to be an absolute deed, the Indemnity Company likewise had the power to sell and convey the property. That being true, the Chancellor properly sustained a demurrer to the petition as amended.

The judgment is affirmed.