**Jack ABRAMS, Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.**

No. 92–5568.

United States Court of Appeals, Sixth Circuit.

Argued March 8, 1993.

Decided Oct. 4, 1993.

W. Jeffrey Scott (argued and briefed), Grayson, KY, for plaintiff-appellant.

John I. Hanbury (argued and briefed), Van Antwerp, Monge, Jones & Edwards, Ashland, KY, Elizabeth Johnson, F.D.I.C., Knoxville, TN, for defendant-appellee.

Before: BOGGS and BATCHELDER, Circuit Judges, and MANOS, Senior District Judge.[*]

---

[*] The Honorable John M. Manos, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

BOGGS, Circuit Judge.

Jack Abrams appeals from a grant of summary judgment to defendant FDIC. The district court held, as a matter of law, that Abrams's liability to the FDIC as successor in interest to a failed bank with which Abrams had a mortgage was not extinguished until the receipt, in cash, of all proceeds flowing from the sale of all property received in exchange for plaintiff's house. We reverse.

## I

Jack Abrams took out a mortgage from Peoples Bank. He later went into arrears on the mortgage. Peoples repossessed the property and then agreed that Abrams would deed the property to the bank and that Peoples would "attempt to sell said property for a fair market price." Abrams agreed to "be responsible for and ... to pay the deficiency, if any, remaining after the proceeds from the sale of said property is applied to the indebtedness as heretofore set out." The bank then dropped its foreclosure action pending in the state court.

In October 1981, the bank sold Abrams's house to Carmel Stevens in exchange for $32,000 in cash and another house ("Stevens's house"). The stated consideration in the deed to Stevens was $72,000—the outstanding sum due the bank on Abrams's house. In August 1984, the bank sold Stevens's house, apparently worth $40,000 [1] (the difference between the stated $72,000 consideration and the $32,000 received in cash), for $22,500. The bank did not seek out Abrams to supply any apparent deficiency.

More than three years later, in December 1987, the bank failed and was closed by the FDIC. Abrams had $6,075.14 on deposit at the bank. The FDIC refused to release the money, but rather applied it to the deficiency that it claimed Abrams owed the bank.

Abrams maintains there was no deficiency because the stated consideration of $72,000 received by the bank in the sale of his house to Stevens satisfied his indebtedness.

On August 29, 1989, Abrams filed suit in state court against the FDIC for improperly converting the funds in his deposit account at the bank. Abrams alleged that he and the bank had agreed that he would not be responsible for additional deficiencies once the house was conveyed to the bank. After removal to federal court, the district court granted defendant's motion to dismiss the complaint. On appeal to this court, we affirmed the district court's ruling that Abrams could not contest his liability to the FDIC by virtue of a side agreement, but remanded for determination of the amount of the deficiency, if any, owed by Abrams to the bank. *Abrams v. Federal Deposit Insurance Corporation,* 944 F.2d 307 (6th Cir.1991).

On remand, the FDIC assembled documents to show that when the bank failed and was taken over by the FDIC, the amount of the deficiency was $19,296.90. Abrams contended that his liability was extinguished at the time that he conveyed the property to the bank. The magistrate judge ultimately held that Abrams's deficiency liability was not finally determined until all the property received by the bank in the transactions was reduced to cash. The magistrate judge also held that it was undisputed that if the deficiency were determined as of the time that Stevens's house was converted to cash, the liability substantially exceeded the amount of money Abrams had on deposit, and summary judgment for the FDIC was appropriate. Abrams appealed again.

## II

On this appeal, we must decide the date on which the deficiency, if any, should be determined: the time of the sale of the house to Stevens, or the time of the sale of Stevens's house by the bank three years later? We hold that in this case the deficiency should be

---

1. In a letter to Abrams dated July 30, 1981, the bank wrote about Stevens's house: "... our appraisal shows it is worth $37,000.00. Of course, we have no buyer at that price at this time and may or may not be able to secure that price in the future." The bank later denoted in its books that Stevens's property was valued at $40,000.

calculated as of the time that the bank sold Abrams's house and took Stevens's house in trade.

Abrams's liability was extinguished when, after he had conveyed his property to the bank, the bank sold it to Carmel Stevens for the stated consideration of $72,000, comprised of $32,000 cash and a house valued by the bank at $40,000. The facts that the bank did not realize $40,000 in cash from the house, after the bank chose not to sell it for a period of two years, and that the bank then accepted only $22,500 for the house, are not chargeable to Abrams.

The FDIC argues that the usual rule is that a debtor's deficiency liability is calculated as of the time that the creditor has repossessed the secured property, has liquidated it in a commercially reasonable manner, and all cash from all transactions was realized. The sum for which mortgaged premises are sold is normally the conclusive test of their value. *Kentucky Joint Stock Land Bank of Lexington v. Farmers Exchange Bank of Millersburg*, 274 Ky. 525, 119 S.W.2d 873 (1938). According to the FDIC, the fact that Peoples did not get top dollar for the property is not relevant.

This case does not fit the usual rule. Parties may contract around the usual provision, *see Blackburn v. National Union Indemnity Co.*, 302 Ky. 605, 194 S.W.2d 838 (1946), and here they did. Abrams and Peoples agreed that Abrams would be liable for any deficiency on the sale of *his* property, not on the sale of successive properties if they were taken in on trade. Taking the FDIC's argument to its logical extension, had Peoples held onto Stevens's house for many years, and then sold it for an insignificant sum, Abrams would have been liable for the deficiency. Alternatively, if Peoples had kept exchanging property for property, Abrams's potential deficiency liability might never be extinguished. That is not a reasonable reading of the agreement.

The cases the FDIC cites to support its proposition actually provide more support to Abrams. The FDIC cites *Blackburn* to show that the ultimate cash proceeds are dispositive of the value of the property. But the contract in *Blackburn* was quite different.

There the debtor executed an instrument, also signed by the creditor, that required the creditor to make diligent efforts to sell the property within 2½ years at a price satisfactory to a majority of the debtors. After 2½ years had passed, the creditor could sell the property at a public or private sale. The instrument also provided that the proceeds from the sale or rental of the property should be applied to the indebtedness. The instrument was executed on June 15, 1937, but the property was not sold until September 27, 1943. The agreement in *Blackburn* allowed the bank greater discretion than did the Abrams/Peoples agreement.

Two of the FDIC's other cited cases, *Broome v. Rodman Ford Sales, Inc.*, 16 Mass.App. 183, 450 N.E.2d 633 (1983) (valuation of a trade-in allowance by a dealer on a repossessed car); and *Chemical Bank v. Miller Yacht Sales*, 173 N.J.Super. 90, 413 A.2d 619 (1980) (valuation of a boat that had been improperly converted), both state that the fair market value at the time of the trade-in or repossession is dispositive. In this case, the repossession and first sale occurred when Peoples sold Abrams's house and received cash and a different piece of real property in exchange. The *bank's* assessment of the fair market value of Stevens's property at $40,000 should be used to determine Abrams's deficiency liability.

We also note that it is probative of the parties' intent that, after the sale of Stevens's house and the resulting "shortfall," Peoples did not seek out Abrams to supply the deficiency. It was not until more than three years later, after the bank had failed, that the FDIC as successor in interest seized on the fact that it was holding Abrams's money to assert the claim. The actions of Peoples imply that it believed there was no deficiency liability because the value of Stevens's property was properly fixed when it was acquired and assessed by the bank.

We REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.