24-3283 (L)
*Hammell v. Pilot Products, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of March, two thousand twenty-six.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

ELIZABETH HAMMELL, on behalf of herself and as executrix and trustee of the ESTATES OF HERBERT AND MARCIA HEBEL, as well as on behalf of the PILOT PRODUCTS, INC. DEFINED BENEFIT PENSION PLAN,

*Plaintiff-Counter-Defendant-Appellee-Cross-Appellant*,

v.

PILOT PRODUCTS, INC. DEFINED BENEFIT PENSION PLAN, PILOT PRODUCTS, INC., CAROLYN HEBEL,

*Defendants-Counter-Claimants-Appellants-Cross-Appellees*.

24-3283-cv (Lead)
25-29-cv (XAP)

---

| | |
|---|---|
| FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE-CROSS-APPELLANT: | DANA E. BERKOWITZ (Natalie A. Willis, *on the brief*), King and Spalding LLP, New York, New York and Atlanta, GA. |

FOR DEFENDANTS-COUNTER-
CLAIMANTS-APPELLANTS-CROSS-
APPELLEES:

JONATHAN G. ROSE, DLA Piper, LLP,
Washington, D.C.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the amended judgment of the district court, entered on January 15, 2025, is **AFFIRMED**.

Defendants-Counter-Claimants-Appellants-Cross-Appellees Pilot Products, Inc. ("Pilot"), Pilot's Defined Benefit Pension Plan, and Carolyn Hebel (collectively, "Appellants") appeal from the district court's amended judgment in favor of Plaintiff-Counter-Defendant-Appellee-Cross-Appellant Elizabeth Hammell, on behalf of herself as executrix and trustee of the Estates of Herbert and Marcia Hebel, as well as on behalf of Pilot's Defined Benefit Pension Plan, on the claim for breach of the fiduciary duty of care, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*[1]  Elizabeth cross-appeals the district court's amended judgment, to the extent that it found in favor of Appellants with respect to her ERISA claim for a breach of the fiduciary duty of loyalty.[2]  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

---

[1]  In the interest of clarity, we refer to members of the Hebel family by their first names.

[2]  In her brief, Elizabeth does not challenge the district court's determination that her conversion claim was preempted by ERISA, and thus has abandoned any such challenge on appeal.  *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).   Similarly, if her arguments on appeal are rejected regarding the claim for breach of the fiduciary duty of care, Carolyn does not separately challenge the district court's award to Elizabeth of attorneys' fees and costs, pursuant to 29 U.S.C. § 1132(g)(1).

This appeal arises from a dispute regarding the management of a pension plan for Pilot (the "Plan"), a now-dissolved manufacturing company. In 1947, Herbert and Marcia founded Pilot and, in 1986, Herbert established the Plan for Pilot's employees. For many years, Herbert, Marcia, and their daughters, Elizabeth and Carolyn, served as directors of Pilot and trustees of the Plan. Herbert, Marcia, and Carolyn were also participants in the Plan. Upon Herbert's death in 2011, litigation ensued about his will and control of Pilot, with Carolyn on one side, and Marcia and Elizabeth on the other. In 2014, they resolved those lawsuits through a settlement agreement, in which Marcia and Elizabeth resigned from their roles at Pilot and as trustees of the Plan, and also sold their Pilot shares to Carolyn. Pursuant to the settlement agreement, Carolyn became the sole officer and shareholder of Pilot, as well as the sole trustee of the Plan. In exchange, Carolyn agreed to pay $1 to Elizabeth, $275,000 to Herbert's estate, and $1,000 per week to Marcia for the rest of her life. It was further agreed that Pilot would indemnify Marcia and Elizabeth for any liabilities of Pilot, which would include liabilities of the Plan.

In 2018, Carolyn initiated the termination process for the Plan with the Internal Revenue Service ("IRS") and the Pension Benefit Guarantee Corporation ("PBGC"). However, the Plan was significantly underfunded, prompting Carolyn to seek an extension to distribute the Plan's assets. On October 25, 2019, Carolyn, through her attorney, sent a letter to the attorney for Elizabeth and Marcia, informing them that the Plan was in the process of being terminated, that it was underfunded, and that "[a]pproximately $1,500,000 needs to come" from Elizabeth and Marcia to correct the underfunding. Joint App'x at 1263. The letter also attached election forms that, if completed, would have permitted Marcia to elect to receive her and her deceased husband's benefits in a lump sum. With respect to the forms, the letter stated, "I have attached the Statement

3

of Rights and Alternatives and Election Form for Marcia Hebel and the Beneficiary of Herbert Hebel, for you and your clients to review and make a determination in that regard." *Id*. Although not noted in the letter or the forms, Marcia's election of the lump-sum benefits would have resulted in a substantially larger dollar amount of benefits to her than would otherwise result from the default annuity if no such election was made before her death.

Over the next couple of months, attorneys for the parties exchanged correspondence regarding the alleged responsibility of Elizabeth and Marcia to fund the Plan, with no resolution. In the correspondence, Elizabeth's attorney requested the "insurer information" for the annuity option because Marcia and Elizabeth lacked the information needed "to make an informed election." *Id*. at 1511. Moreover, in December 2019, Carolyn failed to pay Marcia's annual Plan benefit of $349,910 and, instead, transferred that sum to the client trust account held by her attorney's firm. In April 2020, Marcia died from COVID-19. Because Marcia never completed the election forms, the Plan made a final distribution to Marcia's estate in the amount of $87,477.77, representing payments under a hypothetical annuity for 2020, as well as the $349,910 owed as an annual benefit to Marcia from 2019, for a total of $437,387.77. In February 2021, Carolyn located an additional $293,465 in Plan accounts and distributed that money to herself.

In early 2021, Elizabeth, as executrix of Marcia's estate, brought the instant lawsuit against Carolyn and Pilot, and filed an amended complaint in 2024. The amended complaint alleged that Carolyn had breached her fiduciary duties of care and loyalty under ERISA to Marcia, as a Plan participant, and also asserted a conversion claim under New York state law based on (1) Carolyn's initial transfer in December 2019 to her attorney of amounts owed to Marcia for her annual benefit,

4

and (2) Carolyn's post-termination distributions to herself.[3]

Following a three-day bench trial, the district court determined that "Carolyn breached her fiduciary [duty] to Marcia as a plan beneficiary by failing to give proper notice of Marcia's right to elect a lump sum payment" and found that Appellants were liable for the "difference . . . between the lump sum and the amount . . . received by Marcia's estate to effect the termination," that is, $1,780,321.23.   Joint App'x at 682, 686–87.   The district court found in favor of Carolyn on the remaining claims, determining that the conversion claims were preempted and that, with respect to the duty of loyalty claim, Elizabeth failed to demonstrate by a preponderance that Carolyn's actions regarding the delayed payment of the 2019 annual benefit to Marcia or the post-termination distribution of the remaining funds violated the Plan documents or any provision of ERISA.

On appeal, Carolyn argues that:   (1) Elizabeth, on behalf of Marcia, lacks Article III standing to challenge Carolyn's actions as Marcia received all benefits owed to her under the Plan; (2) the district court erred in applying a heightened fiduciary duty standard regarding notice of the election options upon the Plan's termination, based on Carolyn's family relationship with Elizabeth and Marcia and, under the correct legal standard, no breach occurred; and (3) the district court improperly calculated damages.   Elizabeth cross-appeals, arguing that the district court erred in finding that Carolyn did not breach her fiduciary duty of loyalty under ERISA.

"The existence of standing is a question of law that we review *de novo*."   *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004).   Moreover, we review the district court's findings of fact after a bench trial for clear error and its conclusions of law *de novo*.   *See United States v. Coppola*, 85

---

[3]   The amended complaint also contained a benefits claim under ERISA, 29 U.S.C. § 1132(a)(1)(B), but Elizabeth did not pursue that claim at trial.

F.3d 1015, 1019 (2d Cir. 1996).

**I.  Standing**

Appellants first contest Elizabeth's standing to challenge Carolyn's actions as fiduciary of the Plan.  In particular, Appellants argue that, because "[Elizabeth] was aware of her right to elect the lump-sum distribution and did not make the election prior to [Marcia's] death," she therefore "received all benefits she was contractually entitled to receive under the Plan" and has not suffered an injury in fact that would confer standing to challenge Carolyn's conduct.  Appellants' Br. at 24 (citations omitted).  Appellants further contend that this argument is "buttressed by the PBGC's standard termination of the Plan," which they claim is subject to *res judicata* as to Elizabeth.  *Id*. at 24–25.  We disagree.

To establish standing under Article III of the Constitution, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

In support of their argument that Elizabeth lacks standing, Appellants primarily rely on *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020).  In *Thole*, the plaintiffs, two members of a defined-benefit plan, attempted to challenge the investment decisions of the relevant plan's fiduciaries. The Supreme Court emphasized that, "[o]f decisive importance" to its analysis was that, under the design of the plan, the participants would receive the same amount of benefits *regardless* of the overall value of the plan.  *Id.* at 540.  Accordingly, because "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits," they had "no concrete stake in th[e] dispute and therefore lack[ed] Article III standing."  *Id.* at 547.  However, the Court explained that, had

the plaintiffs "not received their vested pension benefits, they would of course have [had] Article III standing to sue." *Id.* at 542.

Appellants' reliance on *Thole* is misplaced. Here, unlike in *Thole*, Elizabeth challenged actions by Carolyn that she alleged impacted the amount Marcia was entitled to under the Plan—*i.e.*, that, as a result of Carolyn's failure to provide sufficient notice under ERISA, Marcia and Elizabeth did not complete the election forms, and Marcia's estate received nearly $1.8 million less than it would have been entitled to otherwise. Thus, Elizabeth's alleged financial loss, as a result of Carolyn's alleged breach of fiduciary duty, is sufficient to confer standing. As this Court has explained, "non-speculative financial loss" that "actually affect[s]" an ERISA plaintiff, satisfies the Article III standing inquiry. *Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 171 (2d Cir. 2025); *see also Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019) ("[M]onetary loss is a quintessential injury in fact, and even a small financial loss suffices to establish standing." (internal quotation marks and citation omitted)). Moreover, we have explained that an injury in fact can be "traceable to failed notice"—in other words, Carolyn's alleged failure to provide sufficient notice, and the resulting deprivation of the option to elect the higher lump sum amount, satisfies the standing requirement. *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (finding standing where deficient notice foreclosed opportunities to the appellant).

At bottom, Appellants' argument is that Elizabeth has no Article III standing because "the record shows that [Elizabeth] clearly had notice of the Plan's standard termination process," and thus, "has received all benefits owed to her under the Plan." Appellants' Br. at 20–21. "We have cautioned against arguments that would essentially collapse the standing inquiry into the merits and attempts to conflate the threshold question of [the plaintiff's] standing under Article III . . .

with the question of whether [he] has a valid claim on the merits." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (alterations in original) (internal quotation marks and citations omitted). In other words, whether Carolyn provided adequate notice is a merits question that is not part of the threshold inquiry regarding standing.[4]

Accordingly, Elizabeth has standing to bring the claims asserted in this lawsuit.

## II. Duty of Care

Appellants also argue that the district court erred in applying a "heightened" standard of fiduciary duties based on the familial relationship between Carolyn and Marcia. Moreover, Appellants assert that, under the correct legal standard, there was no breach of the duty of care because the notice of the lump-sum option was adequate or, in the alternative, the breach was not prejudicial. In addition, Appellants contend that, even if liability existed, the district court incorrectly calculated the damages. We find each of these arguments unpersuasive.

### A. Applicable Law

ERISA's central purpose is "to protect beneficiaries of employee benefit plans." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009). ERISA imposes four generally applicable duties: a duty of loyalty, a duty of care, a duty to diversify investments, and a duty to act in accordance with the documents and instruments governing the plan. *See* 29 U.S.C.

---

[4] For similar reasons, contrary to Appellants' contention, the termination of the Plan has no bearing on this standing analysis. As a threshold matter, no provision in ERISA strips a plaintiff of statutory standing upon termination of a plan. Instead, Section 502(a)(2) of ERISA broadly states a participant or beneficiary may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 827 (6th Cir. 2007) (emphasizing that ERISA's goals "would be significantly frustrated if a breaching fiduciary could escape liability merely by terminating a plan before a lawsuit is commenced or during its pendency"). In addition, for purposes of Article III standing, the monetary injury caused to Elizabeth and Marcia by Carolyn's alleged breaches of her fiduciary duties was not eliminated upon termination of the Plan.

§ 1104(a). A fiduciary must "deal fairly and honestly with its beneficiaries," *Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 124 (2d Cir. 1997), including providing "sufficiently accurate and comprehensive" notice to plan participants of their rights and obligations under the plan, *Cigna Corp. v. Amara,* 563 U.S. 421, 443 (2011) (internal quotation marks and citation omitted). Accordingly, "when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001) (alterations, internal quotation marks, and citation omitted); *accord Pessin v. JPMorgan Chase U.S. Benefits Executive*, 112 F.4th 129, 137 (2d Cir. 2024).

## B. Fiduciary Duty Standard

As an initial matter, we reject Appellants' contention that the district court failed to apply the proper legal standard in evaluating the relevant notice. In determining that Carolyn had breached her duty of care by failing to adequately notify Marcia or Elizabeth about Marcia's post-termination rights, the district court explained that "[a]cts taken to implement a termination are subject to a fiduciary standard of care to the plan's participants." Joint App'x at 682 (internal quotation marks and citation omitted). With respect to notice in the context of plan termination, the district court noted that the parties agreed in their briefing that "the requirements for notice of plan benefits [in the context of termination] are analogous to the requirements for summary plan descriptions under [29 U.S.C. § 1022]," and thus it assumed (without deciding) that those requirements applied. *Id.*[5] The district court then explained that "ERISA summary plan

---

[5] On appeal, Appellants again agree that the standard for the summary plan description applies to notice in the termination context, and thus like the district court, we assume (without deciding) that such a standard applies here.

9

descriptions . . . must be written in a manner calculated to be understood by the average plan participant and must describe the advantages and disadvantages of the plan." *Id.* at 683 (internal quotation marks and citation omitted).

Although Appellants do not take issue with this articulation of the applicable law by the district court, they focus on an earlier portion of the record where the district court momentarily pondered the possibility that a fiduciary duty could be heightened under certain circumstances when that duty is exercised in the context of strained family relations. *See id.* at 676 ("I recognize that the family relations here were very strained, but that, to me if anything, heightens the fiduciary duty."). However, following that remark, the district court immediately emphasized that it was not imposing any such heightened duty in this case. *See id*. ("*There is at least a fiduciary duty. That's what I'm ruling based on*, but the fact that there was so much acrimony means that all Is and Ts had to be crossed in making sure that fiduciary duties were properly exercised." (emphasis added)). Moreover, any doubt on this issue was further alleviated in light of the district court's subsequent recitation of the details of the applicable legal standard which, as discussed *supra*, is entirely consistent with our precedent. *See generally United States v. Piervinanzi*, 23 F.3d 670, 684 (2d Cir. 1994) (holding that "[the district court's] isolated statement is an insufficient basis from which to conclude [it] employed an incorrect [legal] standard"). In short, when the full record is considered, it is clear the district court did not apply a "heightened" fiduciary duty standard to the claims at issue because of the familial relationships involved.

C.    **Notice**

Appellants also contend that the district court erred in finding that the notice of the lump-sum option provided to Elizabeth and Marcia was legally insufficient. Specifically, Appellants

10

note that it was uncontroverted that Elizabeth knew of the right to elect a lump-sum distribution and had counsel advising her about the options. In addition, to support that the notice was understandable to the average plan participant, Appellants point to evidence that "shows that Pilot received a signed lump-sum distribution election from the other Plan participant, Richard Berwind, the former longtime foreman with a high school education who, without the benefit of multiple counsel, had no difficulty making an election and returning his Election Form to the Plan." Appellants' Br. at 31. As set forth below, we find no clear error in the district court's factual findings relating to the notice issue and, on *de novo* review, we agree with its determination that Carolyn breached her fiduciary duty of care to provide sufficient notice of the effects of the failure to elect the lump-sum option prior to termination.

Although the district court did find it was "undeniable that Elizabeth and her attorneys knew that they could have taken the lump sum," it went on to explain that the notice was insufficient because Carolyn failed to accurately explain the effects of not taking the lump sum prior to the Plan's termination. Joint App'x at 685. Importantly, notwithstanding that the October 25th letter attached the election forms that were referenced in the cover letter, the district court "conclude[d] that the letter was not reasonably calculated to be understood by an average plan participant, nor did it make any effort to describe the advantages and disadvantages of making an election under the plan." *Id.* at 683. Instead, as the district court found, the letter was "most properly understood as litigation posturing, getting into a position to either be in a lawsuit or to make a favorable deal" because "[i]t demanded $1.5 million from Marcia and Elizabeth" even though there was "no evidence presented . . . that they could have feasibly been liable for anywhere close to that sum." *Id.* Thus, according to the district court, the risk of liability to Marcia and

11

Elizabeth "was so greatly exaggerated in that letter that it just obfuscated any notion that the letter also contained advice on the importance of making this election and what the rights were." *Id*. at 683–84; *see also id*. at 684 ("[T]o hit them with the exposure of $1.5 million for a company they hadn't even been involved with for years, that was just overreaching. It wasn't consistent with fiduciary duty. The absurd posturing obscured any notice the letter may have otherwise provided."). Furthermore, the district court found that the obfuscation was intentional. *See id*. at 684 (finding that the Appellants "clearly intended" to avoid having Marcia and Elizabeth understand the options upon termination and "[t]he evidence show[ed] that Carolyn at every turn sought to deplete Marcia's benefits").

We find no basis to disturb these findings and agree with the district court that the letter was "almost exclusively focused on potential litigation or making a deal with the Hebel family" and "was not written so that a reasonable plan participant would understand their options of termination." *Id*. In other words, the brief reference to the election forms in the October 25th letter and attachment of the forms were obfuscated by the litigation posturing that dominated the letter and that Appellants "fail[ed] to provide information [about the effects of failing to elect the lump-sum option prior to termination] when it kn[ew] that its failure to do so might cause harm." *Devlin*, 274 F.3d at 88; *cf. Pessin*, 112 F.4th at 136–37 (holding notice of a potential reduction in accrued benefits, known as "wear-away," was adequate because the summary plan descriptions at issue disclosed "the potential implications of wear-away" and, in particular, "the consequences of wear-away on [the plaintiff's] accrued benefits"). Moreover, the fact that Marcia and Elizabeth were represented by counsel did not alter the fiduciary's duty to ensure that the notice was "written in a manner calculated to be understood by the average plan participant." *Pessin*, 112 F.4th at 140

12

(internal quotation marks and citation omitted).

Finally, the election of the lump sum by another employee, Berwind, does not undermine the district court's determination regarding the sufficiency of Carolyn's communications with Elizabeth and Marcia. Indeed, Carolyn admitted that she "had to send the form" to Berwind "multiple times" because the forms "were not filled out correctly." Joint App'x at 317–18. Furthermore, Carolyn's attorney testified: "[W]e paid special attention [to Berwind] to make sure he understood what was being presented to him," and that Carolyn was not focused on Marcia. *Id*. at 397. The interactions with Berwind support a finding that the October 25 letter itself provided insufficient notice. Those interactions also support a finding that Carolyn knew the harm that would be caused by failing to provide Marcia and Elizabeth information regarding the effects of not electing the lump-sum option and intentionally withheld that information.

In sum, the record was sufficient for the district court to conclude that Appellants breached the fiduciary duty of care by failing to provide sufficient notice of the opportunity to elect the lump-sum option, including the effects of failing to elect that option.

### D. Prejudice

We are similarly unpersuaded by Appellants' alternative argument that, "even if there was a deficiency in the notice provided," the error was not prejudicial. Appellants' Br. at 32.

To recover for deficient notice, a plaintiff must demonstrate "likely prejudice"—*i.e.*, that they are "likely to have been harmed as a result of" the deficiency. *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 585 (2d Cir. 2006) (emphasis, internal quotation marks, and citations omitted). "The question here is whether it is probable that the plaintiff's benefits would have been different had the [notice] been adequate." *Id.* "If the [plaintiff] can make this

showing, the [defendant] may rebut it through evidence that the deficient [notice] was in effect a harmless error—*e.g.*, that the [plaintiff] independently knew the information that was wrongfully omitted." *Id.* (internal quotation marks and citation omitted). A finding of prejudice is reviewed for clear error. *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 257 (2d Cir. 2004); *see also Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 207–09 (2d Cir. 2003)

We discern no clear error in the district court's finding that the deficiency in the notice regarding the lump-sum option was prejudicial. In arguing that there was no prejudice, Appellants again focus on the fact that it was uncontroverted that the attorneys for Elizabeth and Marcia were aware of the lump-sum option. However, that argument misses the mark. The district court explained:

> Because I find that Elizabeth, on Marcia's behalf, could have taken the lump sum, Carolyn's breach was indeed prejudicial. It's undeniable that Elizabeth and her attorneys knew that they could have taken the lump sum but because Carolyn failed to accurately explain the effects of taking the lump sum, they didn't properly understand the effects of what would happen if they didn't.

Joint App'x at 685. We conclude that the district court correctly recognized that Elizabeth's actual notice of the lump-sum election option was not dispositive as to prejudice in this case; rather, the prejudice inquiry was properly focused on the lack of notice as to effects of failing to select that option. On that pivotal issue, the district court found "that the evidence was very clear . . . and just commonsense dictates that had Marcia and Elizabeth received a better description of their rights and not in the context of threatening them with a $1.5 million liability, they would have taken the lump sum." *Id*. at 681. To be clear, there was no evidence at trial that the attorneys for Marica and Elizabeth understood the monetary ramifications if the lump sum option was not selected. Indeed, at oral argument, Appellants' counsel did not contest the district court's finding that "it

14

was really not conceivable that anybody who understood what was going on here would not have exercised their right to a lump sum pay out." *Id*. at 677. Thus, based upon that finding, the district court properly concluded that Elizabeth had demonstrated prejudice from the insufficient notice.

To the extent Appellants rely upon our decision in *Weinreb v. Hospital for Joint Diseases Orthopaedic Institute*, 404 F.3d 167 (2d Cir. 2005), that case is clearly distinguishable. There—by Appellants' own words—the relevant "employer did not send a notice of benefits to a new employee" but instead "wr[o]te multiple times and placed a phone call to the employee to notify the employee that he had not submitted any life insurance forms." Appellants' Br. at 32; *see also Weinreb*, 404 F.3d at 171–72. We found that, under those circumstances, the failure to provide notice was harmless because "the Hospital's repeated efforts to prompt [the employee] to fill out the enrollment form were sufficient to place [him] on actual notice of the Plan's enrollment requirement." *Weinreb*, 404 F.3d at 171–72. Here, in contrast, there was "really no other discussion of Marica's election of benefits rights," Joint App'x at 681, let alone "repeated efforts" to put Elizabeth and Marcia on notice, *see Weinreb*, 404 F.3d at 171.

In short, although Elizabeth may have known of the existence of the election form, the October 25th letter itself was "wholly inadequate to provide meaningful notice regarding this loss of benefits," as it did not explain the "full import" of the choice and obfuscated the importance of the election because of its almost exclusive focus on the $1.5 million in underfunding as to which Marcia and Elizabeth could purportedly be held liable, and those deficiencies in the notice resulted in prejudice. *Layaou v. Xerox Corp.*, 238 F.3d 205, 211 (2d Cir. 2001) (internal quotation marks omitted).

15

### D. Damages

Appellants also argue that the district court "committed reversible error in calculating damages by not considering the 'but for world' that would have occurred if Ms. Hammell had timely submitted a written election to receive a lump-sum distribution." Appellants' Br. at 38. In particular, Appellants contend that, if Marcia had elected the lump sum, the termination of the Plan would have been distressed and the amount of benefits received by the participants would have been reduced.

As we have explained, "one appropriate remedy in cases of breach of fiduciary duty is the restoration of the . . . beneficiaries to the position they would have occupied but for the breach of trust." *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). Moreover, "[c]ourts are not required to provide lengthy analyses in support of their damages findings but they are required under Fed. R. Civ. P. 52(a) to adequately explain the subsidiary facts and methodology underlying the ultimate finding." *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 622 (2d Cir. 2006) (internal quotation marks and citation omitted). We review a district court's remedial award for a violation of ERISA for abuse of discretion. *Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006).

Here, the district court explained that its award of damages, in the amount of $1,780,321.23, represented "the difference . . . between the lump sum and . . . the amount received by Marcia's estate to effectuate the termination." Joint App'x at 686–87. The district court did not abuse its discretion in reaching that determination. The relief provided by the district court allowed Elizabeth to recover the full monetary amount that she would have received if the lump-sum option had been selected, and comported with the "traditional application of the remedy of contractual expectation damages—ensuring that plaintiffs are restored to the same financial position they

16

would have been in, but for [the] breach." *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 594 F. App'x 696, 699 (2d Cir. 2014) (summary order); *see also CIGNA Corp. v. Amara,* 563 U.S. 421, 436 (2011) (explaining that a district court has no authority to "reform" an ERISA plan and should limit itself to "the simple enforcement of a contract as written").

Appellants fault the district court for not considering the possibility that, if Marcia elected the lump-sum option, Pilot would have "lacked the liquidity to effectuate a standard termination" and "been forced into a distressed termination" precluding lump-sum distributions, which would have resulted in Marcia only receiving "outstanding benefits to the statutory cap, which was approximately $69,750 as of 2020." Appellants' Br. at 38. However, as Elizabeth notes, that scenario "assumes that Carolyn herself would not have topped up the Plan to preserve her own claim to over $2 million in benefits and protect herself from liability." Appellee's Br. at 58. There is nothing in the record to suggest that the scenario posed by Appellants was inevitable, and thus, "limit[ing] liability on this basis would breach the cardinal rule that uncertainties in fixing damages are to be resolved against the breaching fiduciary." *Browe v. CTC Corp.*, 15 F.4th 175, 198 (2d Cir. 2021). In sum, the district court acted well within its discretion in determining the damages award.

## III. Duty of Loyalty

Elizabeth cross-appeals, arguing that we should "reverse the district court's holding that Elizabeth did not establish an ERISA violation with respect to two other disloyal acts: the withholding of Marcia's 2019 benefits and the post-termination distribution of *all* newly discovered Plan assets to Carolyn alone."[6] Appellee's Br. at 59 (emphasis in original). The

---

[6] Elizabeth also argues that, "[s]hould this Court conclude that the October 2019 Letter provided adequate

17

district court explained that it could not "conclude that Carolyn breached her fiduciary duty by withholding the 2019 annuity and distributing the excess funds to herself" as Elizabeth had failed to demonstrate "by a preponderance that these actions violated the plan documents or any provision of ERISA." Joint App'x at 686. As set forth below, we find no basis to disturb the district court's ruling on this claim.

Under ERISA, fiduciaries have a duty of loyalty to plan participants and beneficiaries, which requires the fiduciary to "discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *In re DeRogatis*, 904 F.3d 174, 193 (2d Cir. 2018) (alterations adopted) (quoting 29 U.S.C. § 1104(a)(1)(A)); *accord Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). Thus, "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act solely in the interest of the participants and beneficiaries." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (internal quotation marks and citation omitted).

In her brief, Elizabeth makes clear that she "is not challenging any factual determinations made by the district court, but rather its application of the law to those facts." Appellee's Reply Br. at 4. More specifically, Elizabeth contends that the district court erred in finding against her with respect to the breach of loyalty claim because "[i]ntentionally misleading a participant, depleting their benefits, or otherwise harming them to profit yourself is textbook disloyalty under

notice, it should affirm the judgment on the alternative grounds that Carolyn breached her duty of loyalty." Appellee's Br. at 59. However, because we have affirmed the judgment as to the breach of the duty of care, we need not address this alternative argument regarding the notice under the breach of loyalty standard.

18

*Varity*" and "Carolyn repeatedly did just that." Appellee's Br. at 60. However, with respect to the delay in paying the 2019 annuity in August 2020, the district court found that Elizabeth failed to demonstrate that the delay violated the Plan, and Elizabeth does not challenge that determination on appeal. Moreover, even if the delay was prompted by Carolyn's animus, there is no evidence in the record (or even an allegation) that Carolyn misled Elizabeth or Marcia with respect to that delay, and Elizabeth received the full amount in August 2020. Thus, based upon the facts in the record, the district court did not err in concluding that Elizabeth failed to demonstrate a breach of loyalty with respect to the delay in payment on the 2019 annuity.

We reach the same conclusion with respect to the post-termination distribution of the additional money found in the Plan accounts. The district court concluded that Elizabeth failed to demonstrate Carolyn's distribution of that money to herself violated the Plan or ERISA. At trial, the attorney who advised Carolyn on this issue explained:

> We initially consulted Advanced Pension Actuaries to see if [the remaining funds] could be distributed pro rata to people, and were told that everybody was at the maximum benefit limit for qualified plans under [Internal Revenue] Code Section 415, and therefore, Carolyn was the only person who was eligible to receive additional contributions.

Joint App'x at 423. Elizabeth counters that, even assuming *arguendo* that the language of the Plan was vague as to how to dispose of the remaining funds, Carolyn and their attorneys should have "sought guidance from the IRS or PBGC about how to distribute the funds fairly to participants." Appellee's Reply Br. at 16. However, Elizabeth provided no evidence at trial as to what the substance of any additional guidance would have been. In short, given the uncontroverted testimony from Carolyn's attorney regarding the consultation that did take place about the distribution of the excess funds, we discern no legal error in the district court's

determination that Elizabeth failed to prove that Carolyn breached the duty of loyalty by not seeking additional guidance from government agencies about that issue.

*  *  *

We have considered Appellants' and Elizabeth's remaining arguments and conclude that they are without merit.   Accordingly, we **AFFIRM** the amended judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court